Case number 24-5862 HBKY LLC v. Elk River Export LLC et al. Argument not to exceed 15 minutes per side. Ms. Yeo, you may proceed. Your Honors. Rochelle Yeo on behalf of the appellants, Elk River Export and Robin T. Wilson. We respectfully reserve four minutes for rebuttal. Your Honors, Counsel, and may it please the Court. This matter concerns both timber and contract interpretation. And to fully understand the procedural posture of the case today, it's important to reiterate who the original contracting parties were, specifically because the appellee is not one of those parties. So we have Kingdom Energy. That was the initial party that wanted to purchase the land with the timber, but to do so needed financing and a steady revenue source to secure that financing. So Kingdom came to my client, which is party number two, Elk River Export. Can I ask you a question about the issues on appeal? Yes. So one of the points in your brief is that the March 2017 timber contract was for title. Correct. Okay. My understanding from reading the lower court decision is that one of the main issues below was that the May 2016 contract pre-loan transferred title, okay, under the immediate severance doctrine, right? Is that a position that you're pressing on appeal also? No, Your Honor. We're dropping the 2016 argument. We are solely focused on the enforceability of the 2017 contract. Okay, because you believe that the 2017 contract is innovation. Is that correct? Yes. We don't dispute that, what the district court ultimately ruled on that issue, Your Honor. And so with respect to that particular contract, that was one of the many contracts that Elk River and Kingdom entered into, which provided that Elk River would purchase the timber, would harvest it over a number of years, and would pay to Kingdom the royalty interest that would serve as that revenue source. Kingdom then went to the lenders and said, there's a piece of property we'd like to buy. We have timber contracts set up. Elk River has also done appraisals of the timber. Please loan us the money so that we can buy this property. And that's ultimately what they did. How did they have this right to sell the timber when they didn't own the fee and the property? How did Kingdom have the right to sell the timber? By March 1st, 2017, they did have the right to sell the timber. If you look at each of the agreements between Kingdom and the lenders, they each reflect at least one time that the sale of the timber... But they entered into the contract before the loan. I'm curious. I'm sorry, can you say that? They entered into the contract to sell before the loan the timber.  So they didn't have a right to sell it? In 2016, they did. But they didn't own the land. Correct. They just had the timber rights? No, the intention was we would enter into this contract so that we could purchase the timber and then you could begin performing it. The agreements between the lenders and Kingdom set up specifically that Kingdom was going to sell the timber. You can look at each of the ones that they ultimately executed. The security agreement... What I don't understand is when you said a moment ago that the 2017 contract was a novation and you clearly agreed, that wiped out all of the prior contracts between Kingdom and Elk River. And yet Kingdom had signed with HBKY and given HBKY a security interest before this novated contract. So I don't see how you have a right here that's superior to the HBKY security interest. So your honors actually hit the nail on what is the initial error of what we allege of the district court. So the UCC provides a provision. It's specifically in Kentucky. It is 355.9-315. That's the provision that states if the secured party authorizes the sale in some way, then the collateral can be sold and that the security interest that exists in the collateral simply transfers to the proceeds of that collateral. And if you look specifically... So you have to win... So you're pressing the either A, you were authorized... Yes. Or B, you were a buyer in the ordinary course. That's correct, your honor. Okay. On the authorization, why doesn't the mortgage language take care of that? So all of those agreements were executed together and at one time. So under Mays v. Board of Directors, they have to be interpreted to all have effect. And under Moores v. Kline, they all have to be read together. So if we consider the mortgage in connection to the note purchase agreement, what the note purchase agreement said, specifically in section 5.1, that the company, meaning Kingdom Energy, will establish procedures acceptable to the agent for the collection of checks, wire transfers, revenues, sales proceeds, including without limitation from the sale of the timber. That right there is a direct reference that they intended for the sale of the timber to occur. If you look at the secured note, which is attached to the note purchase agreement, specifically section 1.4, it provides in relevant part that the timber sales is a mandatory prepayment event. Not in the sense that the entire note has to be repaid before the timber can be sold, but what the lenders in Kingdom ultimately agreed to was that 100% of the net proceeds of the timber that was owed to Kingdom would go towards paying down the principal. So again, that's a reflection that the lenders in Kingdom anticipated that the timber was going to be sold and that they intended for it to be sold so that it would pay down the loan. But that doesn't mean it would be clear of any security interest or that they were giving up their security interest. So from a practical standpoint, Your Honor, it doesn't make much sense that they would sell it with the security interest in it because the lenders, Kingdom, and Elk River all knew who everyone was. Elk River was specifically named in some of the agreements between the lenders and Kingdom as the purchaser of the timber. It wouldn't make much sense if they assumed that Elk River was going to come onto the property, timber it for a number of years, and get absolutely no consideration for the work that they did. To ask my question in a different way, if there had not been the March 2017 novation, but you just had the contract between Elk and Kingdom that preceded the HBKY loan, then I could see that your timber interest would take priority over the subsequent security interest. That HBKY had. But doesn't the fact that this 2017 contract between you and Kingdom was a novation change everything? It doesn't change everything, Your Honor. It just changes the type of argument. With the 2016 contract, it was about a point in time. Who got there first? With the 2017 contract, it's about whether or not the lenders authorized the sale to go to Elk River, or was Elk River a buyer in the ordinary course of business? We're arguing under both of those theories in the alternative to each other. Well, on the buyer in the ordinary course, how do we know from any evidence in the record that Kingdom was in the business of selling timber? One of the things that we had attached to our motion for summary judgment pleadings was the royalty collateral agreements themselves, which said that Kingdom had the right and responsibility to sell the timber. That's part of the evidence. Why does that show that they were selling timber in the ordinary course of their business? So part of that agreement also required that they sell it, essentially, in proportion to the same terms as what is ordinarily accepted in the business. But also with that... That doesn't say it's their business, does it? Don't you have to show it's their business? With that, Your Honor, there's additional documents. So if we look at the Bell Circuit Court judgment, which was also attached, there's actually a lengthy description of how Kingdom was in the business of selling timber, how it had sold it to several other parties. And the complaint, HBKY's complaint, also referenced all of those other individuals that Kingdom had sold timber to. So that's how they were in the business of selling the timber. I do want to touch a little bit more on your question, Your Honor, specifically with respect to whether or not it was free and clear. So this idea that they could have sold it, but not agreed to let go of the security interest, we have to read it with the note purchase agreement. And they specifically intended, in the note purchase agreement, for their security interest to be in the proceeds. Because they were going to use the proceeds that Kingdom got from the sale of the timber to pay down the debt. That's what the note says. The mortgage also provides that a security interest will exist in the proceeds from the sale of any collateral. So these references to a sale of the collateral occurring is an acknowledgment that the lenders not only intended the timber to be sold, but that as it was sold, it would pay down the debt that was between them and Kingdom. Your Honor, I still don't see anything explicit that says it's free and clear. It doesn't. You're going to sell, anytime you enter into a security agreement with a company that has inventory that they're moving, there are going to be proceeds. And there's going to be assumptions about whether the proceeds are going to go to pay down a loan or not. And nobody ever anticipates that anybody's going to go out of business either. So nobody really thinks about the niceties of what's going to happen necessarily. So I guess I'm just looking for something more explicit that says that this is free and clear. Well, on that note, Your Honor, it doesn't necessarily have to be explicit. It's based off of the agreement between the secured party and the debtor and how they authorized it. You mentioned inventory. If you look at the security agreement, it specifically provides that other than sales of inventory in the ordinary course and sales permitted by the no purchase agreement, the collateral is going to stay put. If you follow that definition of inventory through the security agreement and its reference to the UCC, it includes standing timber to be cut under a contract or conveyance of sale. So each and every one of the documents between the lenders and kingdom acknowledge that a sale of the timber will occur. But do you have to win the immediate severance argument to prevail on this argument? No, Your Honor. And I can explain that a little bit in that it's essentially an either or. It's an authorization or a buyer in the ordinary course and then immediate severance or under Ream v. Fugate, a right to timber the property because we weren't able to prefer that contract. Do you have to win the immediate severance argument to be a buyer in the ordinary course? Yes, Your Honor, because buyer in the ordinary, of course, requires title. Thank you. If there are no other questions. Thank you. Thank you. Good afternoon, Your Honors. Clark Goodwin on behalf of the affiliate HBKY. And just to respond very quickly with Your Honor's indulgence, I'd like to reframe the argument on the central issues below. This is, of course, an appeal of a district court decision. And this court's obligation, as it is in every case, is to review the case that was actually presented and actually decided and not indulge a non-ending series of new and newly fashioned arguments crafted only after an adverse ruling below. And that's largely what this appeal is. As we heard, and it's a testament to the skill of counsel that it becomes easy to lose focus on what this case is about. But as we heard, this case is fundamentally one about coward. Who has the priority? About priority. They do not now dispute that my client has the security interest in the underlying collateral. And they do not dispute on appeal that that 2017 agreement novated the previous 2016 timber sales agreement. Those two facts, those two legal conclusions, effectively eviscerate the bulk of their appeal. It forces them to retreat into a series, again, increasingly strained arguments and exceptions. But what they can't overcome is what the district court found so clearly. My client has a secured interest. Elk River does not. My client has a priority interest. By definition, they cannot. And any exception or theory or additional argument they advance here today simply can't overcome those facts. They weren't raised below. They weren't proven below. They weren't properly preserved. The issue was addressed below. I beg your pardon, Your Honor. I thought the authorization issue was addressed below. Part of the authorization issue was raised below. Well, okay. Can you just address it then? I mean, I understand you think they waived everything. But what's the response on the authorization? Respectfully, Your Honor, I don't believe they waived everything. But they advanced an argument that the lenders authorized the sale or disposition of this collateral free and clear of the security interest. It's not accurate. But in making that argument below, they relied exclusively on provisions of the royalty agreement itself, as we just heard during Appellant's remarks. They had an opportunity to make their argument. They pointed to two provisions of royalty agreement. The district court rejected it.  What is your argument? I mean, I take it your argument is the mortgage probably takes care of it, right? But what is their argument is, look, we got to look at the royalty agreement, the note agreement. We got to look at all of them together and make sense of the whole thing. And if you look at the whole thing together, it seems pretty obvious that the parties anticipated that this timber was going to be sold free and clear and the proceeds were going to be used to pay off the debt. And what's your response to that? Well, as your Honor's earlier question suggested, be that as it may, even if there wasn't an anticipation that there might be some future sale, there's no suggestion there was an express authorization to sell that collateral free and clear of our security interest. And that's determinative of this case. As the district court noted, the mortgage was clear. And considering the mortgage and all the other documents contemporaneously, the intent of the parties was unambiguous to grant my client and their predecessors an unconditional and absolute first priority lien in this collateral. So if there hadn't been the 2017 contract, would you still be able to make that argument? Or would not the sale of timber to Elk River be understood to have priority over your security interest? It would not. Why not? Well, first on appeal, that's not in dispute. I know, but I'm just asking. And below what was litigated was this question as to whether the 2016 timber sales agreement somehow precluded Kingdom from conveying that first priority lien to my client. And as we said alone, the district court ultimately intimated, although the decision largely turned on the question of ovation, it wasn't one for title. And it wasn't one that deprived Kingdom of the ability to make that subsequent conveyance. Pointing out a couple, for a couple of important reasons. Number one, I'm sorry. No, go ahead, I'm sorry. Number one, the timber sales agreement did not provide for immediate severance. It simply granted Elk River the right to enter upon the land and remove the timber. For a period of years, and at one point it was 10 and at another point it was seven. That's correct, Joan. And under that sort of arrangement, under Kentucky law, the buyer only obtains title to such timber as is actually removed, which in the record was not. Do you agree there's no real logical difference, though, between the March 2017 agreement and the May 2016 agreement on the immediate severance question? In other words, if it were true, I understand they're not pressing the argument, but if they were right in their brief that it was a sales agreement in 2017, the novated agreement wouldn't logically the previous agreement also have been the same? Is there any difference between the agreements on that front? Well, I'm not sure about your previous question. I can answer that. The agreements are largely the same and neither provided for immediate severance. But critically, even... But that question really comes down to, you know, is it a term of years? How much timber is coming out? You know, there are all kinds of Kentucky cases that they cite and, you know, you all don't really make much of an argument on it in your briefing, but it seems to me that kind of would tip in their favor if I were looking at it. But I don't know. I'm not sure. Two quick responses, Your Honor. Number one, you are right. Immediate severance is a relative term. And even the cases that the appellant relies on suggest that courts have to analyze the totality of the circumstances. So why wouldn't this be immediate severance? If somebody has billions of acres and says you can harvest all the timber in 10 years and given the amount of equipment that it takes, why isn't that immediate severance? Well, first and foremost, as the district court noted, the contract read and provided otherwise. It said it was conveying a right to enter upon and remove timber, which is separate and distinct from those cases that recognize a contract calling for immediate severance. But under the factors that Kentucky courts have explored as to what provides immediate severance, it includes factors such as the terrain, the amount of timber, the amount of land, accessibility to the land. So why aren't there fact questions as to whether this is immediate? Well, it's important to emphasize that the appellant initiated the summary judgment proceedings. Is there a motion that... I thought both of you moved for summary judgment. Am I wrong? We both did. There were cross motions. But of course, to rely on that argument, there is simply no evidence in the record about any of those factors that could support their position that this call for immediate severance. And so if it's not for immediate severance, so what? Well, the grantor still would retain a reversionary interest in the timber and the district court recognized that as well. So even if the conveyance in 2016 mattered, which it does not because of an ovation and even it's somehow conveyed title pursuant to this theory, they still would have retained a reversionary interest that would revert back to the grantor at the end of the contract. And again, it's critical to emphasize that there's no evidence in the record that any steps have been taken to timber this property. But was that because of all these developments happening so quickly that they couldn't actually start harvesting the timber? Well, I can't answer that and neither can the record. Well, didn't the Kentucky courts answer that in the Bell County judgment? The Bell County... I'm sorry, Your Honor. No, go ahead. It expressly reserved questions of priority for this federal court procedure. That was a breach of contract case actually initiated by Kingdom, but then ultimately Elk River prevailed. But in entering that judgment, the Bell County Circuit Court was clear and explicit that questions here about competing creditor's rights... No, no, no. My question is, didn't Kingdom breach the contract with Elk River? That's what the Bell County Circuit Court... Okay, so we have a court judgment that says they breached. So wouldn't that... I mean, so it's not surprising that Elk River wouldn't have been able to timber the property because the other party breached, right? But... I mean, wouldn't that be an excuse? Like I would say, hey, I tried to get on this property, but they wouldn't let me. And by the way, the court said they breached the contract. They breached the 2017 agreement, which is what the Bell County Circuit Court Proceeding was about, which was a year after our security interest was created, perfected, and attached. So it doesn't resolve the question here, which is one of priority. What... Can you simply say what in your security interest explicitly precludes Elk River having a right to the timber? As the district court recognized, the language in the mortgages was express, explicit, and clear. It unequivocally conveyed to my client an absolute and unconditional first priority lien. It acknowledged the existence of these other security agreements, including the royalty agreement, but nonetheless indicated that this first priority lien, this security interest that it was granting to my client, was intended to be absolute, unimpaired, and unaffected by any other actions, and by any sale, modification, or disposition of the underlying... If Elk River had rights before those mortgages, as you call them, were signed, how could this later security interest preclude Elk River's prior interest? Well, that's an interesting question, Your Honor, but that's not our case here. Again, those questions were litigated below. They're not on appeal here. On appeal, Elk River does not dispute that the operative timber sales agreement is the 2017 agreement, and they do not dispute that my client has a security interest. So the way a novation works is it wipes out the prior contract and starts the new contract on the day that the new contract is signed, which is after your security interest has been created. Is that right? That's correct, Your Honor. So why would somebody sign a novation under these circumstances? That'd be a question for Elk River's counsel. Well, the original contract obligation isn't retroactively wiped out, right? You still were under that obligation up until the time of the novation, right? You can't go back in time and say, oh, you were in breach because of this novation. Well, again, it wasn't our obligation. This is an agreement between Elk River and Elk River. I know, but if they took the timber and immediate severance in 2016 and had it, and they had title to it, and then they novated the agreement, it's not obvious to me that they didn't retain title up until the moment that they novated. And then if they still had title, they still had title. Maybe not. Maybe the novation changes it. But I'm just curious. A novation doesn't operate retroactively, right? But in your question, Your Honor, you presupposed that the contract provided for immediate severance, and that's not what happened here, and that's not what the district court found. And the district court was right. So I know you keep asserting that, but I'm just trying to explore a little bit more as to why that is. And the problem is that you're relying on this immediate severance need, and yet this Bell County court said Kingdom was the one that prevented Elk River from immediately severing. And I mean, it just seems there's a certain bad smell to this whole thing in terms of what's happening to Elk River. Understand and appreciate the question, Your Honor. But again, it's important to emphasize that the Bell County Circuit Court proceeding was about this 2017 contract. And in a priority dispute like this, chronology matters. And although there are a host of other arguments that we did raise and litigate below as to how we could still obtain a security interest, even with the existence of the 2016 Timber Sales Agreement, which we acknowledged at the time, the chronology still makes the question easier here. Our security interest was perfected and attached a year prior to this agreement and prior to any alleged breach by Kingdom or that proceeding. So what was the date of your mortgage, the mortgages that you're mentioning? In June of 2016. June of 2016. And was it July of 2016 that Kingdom threw Elk River out? Is that it? I believe that's correct, Your Honor. And on this question about the 2017 agreement, and respectfully not to dwell on questions of waiver and forfeiture, but we do have a good faith argument that that wasn't properly raised at all. They did not raise the question that the 2017 Timber Sales Agreement mattered. They limited their arguments below to the 2016 Timber Sales Agreement. Obviously, it came up within the context of the dispute over innovation, but they did not argue that the existence of the 2017 agreement or its breach affected these questions of prior work. Raising them for the first time in the motion. My understanding right now is they're saying essentially the March 27 agreement just makes it clear that they're a buyer for purposes of their buyer in the due course argument. But it doesn't really affect, I don't hear them making a priority argument because they're not going back to the 2016 agreement. They're saying the no purchase agreement says sale of proceeds from timber, so we think we're authorized. And oh, by the way, we're also a buyer in the ordinary course. The March 2017 agreement plus the Bell County judgment shows that we're a buyer for satisfying that factor. That's my understanding of their argument. Do you disagree with? Well, I certainly disagree that they qualify as a buyer in the ordinary course and as the district court. Do you think that it depends solely on them there being an immediate severance in the 2017 agreement? Well, more fundamentally than that, I think it falls on their failure to carry their burden of proof. But why wouldn't they carry their burden on the buyer question if what they said was, here's my contract, here's the Bell County judgment, it's hard to conclude that they're not a buyer. I mean, I'm not saying they're a buyer in the ordinary course, but if I agreed with them that it was an immediate severance solely by looking at the contract and looking at this judgment, why wouldn't that satisfy their burden on the buyer part of it? Well, of course, they have to satisfy their burden on all the elements. Yeah. As His Honor's question suggests, they really have to run the table to overturn the district court's judgment. You could point to what you think is the flaw in the buyer in the ordinary course argument. As the district court noted, the party claiming status as a buyer in the ordinary course bears the burden of proving that status. And Elk River did not bear that burden. They failed to even allege that they were a buyer in the ordinary course and critically. Well, if I were going to say, I think they're a buyer in the ordinary course, what would be your point to show that I'm wrong? Well, unfortunately, there's nothing in the record to support that conclusion, Your Honor. There's nothing, even though, even if they had alleged that Kingdom sold the timber, there's nothing in the record to suggest that Kingdom was in the business of selling. They pointed to the record in the Elkville County case showing that Kingdom had made a bunch of sales. Well, and they pointed to the existence of the royalty agreement itself. And as the district court noted, relying solely on that agreement, along with the recitation of the statutory elements, to conclude that they were qualified as a buyer in the ordinary course would be, in the district court's words, a feat of inferential gymnastics to such an extent and to such a degree that itself would be a perverse player. And the district court got that right. Thank you. And I see you've got Thank you, Your Honor. Your Honors, I want to address a couple of points outright. He made this argument that we didn't allege that the 2017 contract conveyed title. We most certainly did. And in fact, we wrote to the court,  the March 1st, 2017 timber agreement conveyed title to Elk River. That is in our pleadings from the beginning of the motion for summary judgment to the end. I do also want to point out that up until this appeal, the appellee didn't really argue that Kingdom was not allowed to sell the timber the way they did. And in fact, in their own motion for summary judgment, wrote, quote, Kingdom exercised its rights in the collateral when it negotiated and entered into the new 2017 timber contract with Elk River. They cannot have this both ways. If Kingdom's allowed to sell it, then they're allowed to sell it. And I wanted to address this issue of whether or not there was some sort of explicit acknowledgement that the timber could be sold free and clear. There are only two instances in which collateral can be sold and the security interest doesn't go on in the collateral, but it transfers to the proceeds of the collateral. That's if the sale is authorized and that's if the sale is pursuant to a buyer in the ordinary course exception. What we've argued is if you read these agreements together, it is very clear that the lenders anticipated taking Kingdom's share of the proceeds to pay down the debt. The mortgage provides that the security interest will exist in the proceeds. They wouldn't have that language if they were not anticipating transferring their security interest to the proceeds that were owed to Kingdom. I also want to touch on this immediate severance, which was certainly pled before the district court and this either or argument with whether or not we're only entitled to title of the timber as however much we ultimately take from the property. The district court and the appellee later cited Ream versus Fugate. What they did in citing that case, though, is that they specifically cut off the second half of the sentence. That said that you only get title to however much you take off of the property, however much timber you take. The main problem with your immediate severance argument, the fact that we just don't have a lot of information in the record. Like I don't I'm not even sure I know how many acres each of these plots are. I'm not sure I've seen that in the record. What's the terrain like? How many acres would you be able to clear a day? I mean, all of that. I know it's it's for a term of years. And OK, and I I know the total acreage, I guess. Is it all timber? Is the whole thing? I mean, we don't know, have any of that information, do we? You're not wrong, Your Honor. We don't have that information. I think that's an excellent question to send it back to the district court for. Well, whose burden was it to put evidence in the record on it? So we had attached the timber agreements and we alleged it was 17,000 acres of timber. What we did for the district court and what we did for this court as well is we analyzed Kentucky law that considers these immediate severance cases. And we explained how under each factor our contract would fall as an immediate severance. There's Dills versus Hatcher, which was a 5000 acre of property that the court found wasn't an immediate severance. Look, I'm saying I don't know the answer to that question, by the way, about the burden. I mean, arguably it was their burden to show that it wasn't an immediate severance with respect to the pre-loan agreements because they had, they arguably had to establish that Kingdom had the property to give as a security interest, right? Which means that it couldn't have been an immediate severance. So that would have been their burden. But you now have taken on the burden, perhaps, of whether it was an immediate severance because you're arguing about the March 2017 agreement. I agree, Your Honor. And I think part of the problem for why that happened was the immediate severance issue was something the district court created on its own. And the law that it cited was in its 2023 opinion. It had never mentioned immediate severance before that. And in its 2022 opinion... But that's part and parcel of deciding whether it was a sale or not, right? Well, it's specific... And if your argument was in 2016 that it was a sale and therefore they couldn't give a security interest because the timber was sold, that raises the immediate severance issue, right? Even if you don't call it that. It was part of the title inquiry. And if you look at the 2022 opinion of the district court, there was no dispute that these contracts were for title of timber. The district court made that distinction in 2023. So the actual arguments on immediate severance didn't come until after the 2023 opinion and the motions to reconsider. If your honors have any additional questions, we will otherwise rest it on the brief. Thank you, your honors. Thank you both for your argument. The case will be submitted.